FINKELSTEIN & KRINSK LLP
Jeffrey R. Krinsk, Esq. (SBN 109234)
jrk@classactionlaw.com
Trenton R. Kashima, Esq. (SBN 291405)
trk@classactionlaw.com
550 West C St., Suite 1760
San Diego, California 92101
Telephone: (619) 238-1333
Facsimile:  (619) 238-5425

*Attorneys for Plaintiff*
*and the Putative Classes*

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Les Ferguson,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CVS Pharmacy, Inc.,**<br><br>Defendant. | Case No:  **'18 CV 1529 JLS  MDD**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1. Misleading and Untrue Advertising (Cal. Bus. & Prof. Code §§ 17500,** *et seq.***);**<br><br>**2. Violation of the Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750,** *et seq.***);**<br><br>**3. Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200,** *et seq.***)**<br><br>**4. Fraudulent Business Practices (Cal. Bus. & Prof. Code §§ 17200,** *et seq.***)**<br><br>**5. Unlawful Business Practices (Cal. Bus. & Prof. Code §§ 17200,** *et seq.***)**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Les Ferguson ("Plaintiff"), on behalf of himself and others similarly situated (the "Class"), based on the investigation of counsel and his own individual knowledge as to Plaintiff's own circumstances, hereby brings this Complaint against CVS Pharmacy, Inc. ("Defendant" or "CVS"), as follows:

## I.   **INTRODUCTION**

1.    Plaintiff brings this proposed class action seeking damages and injunctive relief from Defendant CVS for its unlawful, unfair, and deceptive practices in the marketing and sale of Algal-900 DHA (the "Product" or "Algal-900 DHA"). CVS sells the Product on its website and in thousands of its retail stores nationwide.

2.    CVS manufactures and sells Algal-900 DHA as a dietary supplement, promoting it—in bolded letters on its primary display panel and packaging—as "clinically shown to improve memory," and as the only DHA form with clinical proof of efficacy, capable of reducing errors "50% or more" in an "episodic memory test."

3.    CVS's submissions about Algal-900 DHA are false and misleading. Comprehensive, high-quality, clinical studies of adults' cognitive performance have shown that omega-3 fatty acids, including DHA, work no better than a placebo. In a 2014 report published in a top peer-reviewed clinical nutrition journal, researchers conducted an extensive meta-analysis of 34 randomized, controlled trials of omega-3 fatty acids involving 12,999 subjects, and concluded that omega-3 fatty acids "do not improve cognitive performance in children, adults, or the elderly." Moreover, a five-year NIH study of older adults, published in 2015, found that omega-3 fatty acid supplements "[do] not have a statistically significant effect on cognitive function." The agency states that "substantive conclusions about the value of [omega-3 fatty acids] cannot be drawn."

4.    The sole study on which CVS relies for its submission that Algal-900 DHA improves memory is a limited, short-term study conducted by in-house scientists of Martek Biosciences Corporation ("Martek"), a dietary supplements

1

manufacturer. The Federal Trade Commission has concluded that this study does not support claims that DHA improves memory, and has prohibited Martek from making memory claims based on this study. Still, CVS relies exclusively on this study for its claims that Algal-900 DHA improves memory.

5. Plaintiff Les Ferguson purchased CVS's Algal-900 DHA, and found that it did not perform as advertised. He would not have purchased the Product had he been aware that it has no clinically proven effect on memory and cognitive performance in adults.

6. Plaintiff seeks an order enjoining CVS from continuing its false and misleading marketing practices with regard to Algal-900 DHA, and providing Plaintiff and the proposed Classes of purchasers (as defined below) with all compensation available under the law.

## II.   JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under the Class Action Fairness Act. 28 U.S.C. § 1332(d). The total amount in controversy exceeds $5,000,000, exclusive of interests and costs, the number of members of the proposed Class is 100 or more, and at least one member of the Class is a citizen of a state different from the defendant.

8. Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events and misrepresentations giving rise to the claims occurred in this District, Plaintiff Ferguson resides in this District, and Plaintiff Ferguson purchased CVS's Algal-900 DHA in this District.

## III.   PARTIES

9. Plaintiff Les Ferguson is a resident of San Diego County, California. During the Class Period (defined below), Plaintiff purchased Algal-900 DHA for personal use from a CVS retail location in San Diego, California.

2

10.     Defendant CVS Pharmacy, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at One CVS Drive, Woonsocket, Rhode Island. CVS is a public company engaged in the retail sale of prescription drugs, supplements, and general merchandise. It has approximately 9,800 retail locations in the United States. CVS also sells products online at www.cvs.com.

11.     Defendant, directly and through its agents, sells Algal-900 DHA throughout the United States, including in the state of California. Defendant is the registered marketer, retailer, and distributor of Algal-900 DHA, and created and disseminated the false and misleading labels for the Product.

## IV.   FACTUAL BACKGROUND

### A.   Omega-3 Fatty Acids

12.     Omega-3 fatty acids are long-chain, polyunsaturated fatty acids (PUFA). There are three main omega-3 fatty acids: alpha-linolenic acid (ALA), eicosapentaenoic acid (EPA), and docosahexaenoic acid (DHA).   ALA is found mainly in plant oils such as flaxseed, soybean, and canola oils.  While, DHA and EPA are found in fish and other seafood.

13.     Generally, Omega-3 fatty acids are not able to be produced by the body. ALA is an essential fatty acid, meaning that the human body cannot make it, so individuals must get ALA from the foods and beverages you consume. The human body can convert some ALA into EPA and then to DHA, but only in very small amounts. Therefore, getting EPA and DHA from foods (and dietary supplements) is the only practical way to increase levels of these omega-3 fatty acids in your body.

14.     Nevertheless, Omega-3 fatty acids are contained in substantial amounts in a variety of foods, including fish, vegetables, vegetable oils, and nuts.  Accordingly, supplementation of Omega-3 fatty acids is often not required.  For example, the National Institutes of Health ("NIH"), Office of Dietary Supplements) notes that

3

children (depending on age and gender) only require between .5 grams and 1.6 grams of ALA per day and adults need between 1.1 grams and 1.6 grams per day.  Thus, NIH states that individual can get adequate amounts of omega-3s by eating a variety of foods and that Omega-3 deficiency is very rare in the United States.

15.   It should also be noted, that recommended amounts of EPA and DHA have not been established and the U.S. Food and Drug Administration ("FDA") recommends consuming no more than 3 g/day of EPA and DHA combined, including up to 2 g/day from dietary supplements as it may cause health problems.

**B.   CVS's Algal-900 DHA Labeling**

16.   CVS manufactures and markets its Algal-900 DHA dietary supplements. As per the supplement's instructions, CVS recommends that individuals take 900 mg of DHA per day.  This is a relatively large amount as most individuals only need between 500 mg to 1.6 grams per day.

17.   CVS's Algal-900 DHA is not inexpensive, it is often sold for more that thirty dollars for a 30 day supply.  CVS commands this price by aggressively marketing its Algal-900 DHA as a treatment for memory improvement and brain health.  On the front and back of the package, CVS claims that Algal-900 DHA offers "CLINICALLY SHOWN MEMORY IMPROVEMENT." On the front of the package CVS advertises that Algal-900 DHA is "[t]he only DHA form & dosage clinically shown to improve memory" and makes similar claims on the back of the package and the bottle:

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17





18.   CVS repeats this message on the back of the label and adds more specific statements:

**CVS/pharmacy Algal-900\* DHA is an algae-sourced omega-3, and is clinically shown to improve memory and support eye and heart health\***

**\* In a clinical study of healthy subjects 55 years and older, after 6 months of daily supplementation with 900mg of algal DHA in an episodic memory test:**

• Errors were reduced 50% more in the algal DHA group than in the placebo group.

18
19
20
21
22
23
24
25
26
27
28

5

• When contrasted against expected performance levels, the algal DHA's group memory improved like it was 7 years younger versus the placebo group which improved by 3.6 years.

19.     Charts and tables on the back of the package imply that the Product is an essential supplement for proper brain functioning, and superior to other omega-3 products. The packaging reads that "DHA represents 97% of omega-3 fatty acids in the human brain!"

### C.     CVS's Claims About Algal-900 DHA Are False and Misleading

20.     CVS's Algal-900 DHA claims are false and misleading because they rely on a small, limited study that has been discredited. Rather, an overwhelming body of research finds no clinical effect of DHA on memory. CVS's claims also violate federal disclaimer regulations, rendering the Product misbranded, false, and misleading.

### 1.     The FTC Has Concluded that the One Study Relied on by CVS for Its Algal-900 DHA Claims Does Not Support Such Claims

21.     The sole study on which CVS relies in support of its Algal-900 DHA claims is titled "Beneficial effects of docosahexaenoic acid on cognition in age-related cognitive decline" by Karin Yurko-Mauro et al., also known as the "MIDAS Study."[1] This study purports to show that DHA supplements improve learning and memory function in subjects with age-related cognitive decline.

22.     The Federal Trade Commission (FTC), however, has already concluded that the MIDAS study does "not reveal any improvement in working memory" and that "clinical-proof claims [based on the study] are false and misleading."[2] The FTC also noted that the study's principal investigator and author was an employee of Martek, which funded the study for the purpose of promoting its own DHA product,

---

[1] The full citation for the article is: Karin Yurko-Mauro, Beneficial Effects of Docosahexaenoic Acid on Cognition in Age-Related Cognitive Decline, 6 *Alzheimer's & Dementia* 456 (2010).
[2] FTC, *Statement of Chairwoman Edith Ramirez and Commissioner Julie Brill: In the Matter of i-Health, Inc. and Martek Bioscienes Corp.* (June 6, 2014), *available at* https://goo.gl./BdKT70 (viewed Jan. 29, 2016).

CLASS ACTION COMPLAINT

"BrainStrong Adult." The FTC entered a consent decree with Martek, banning it from basing memory claims on the MIDAS study. In announcing the action, the FTC stated:

> Results [from test subjects performing episodic memory tasks] . . . did not yield a pattern of statistically and clinically significant improvement in the DHA group relative to the placebo group. Whether analyzed separately or as a composite, the effect size of any statistically significant, between-group difference was trivial, and no evidence showed that any such difference correlated with improvement in everyday episodic memory tasks outside the laboratory, such as the ability to remember the location of one's sunglasses or why one entered a room.[3]

23.    In the subsequent consent decree and accompanying FTC order, the FTC enjoined Martek and its partner company, i-Health, from making any memory improvement and cognitive decline claims, absent "competent and reliable scientific evidence" that held up "in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true."[4] The FTC also enjoined Martek and i-Health from misrepresenting the results of the MIDAS study, including through the use of the phases "clinically shown" or "clinically proven." Martek quickly took "BrainStrong Adult" off the market after entry of the Consent Decree. Martek no longer promotes any DHA products as improving memory in adults.

24.    Despite these findings, CVS makes the same false and misleading claims about the cognitive health benefits of its DHA supplement, and relies on the very same MIDAS study that the FTC has unequivocally rejected as a basis for such claims.

---

[3] *i-Health, Inc. & Martek Biosciences Corp.*, No. C-4486, *available at* https://goo.gl/ERTkEP (viewed Jan. 29, 2016).
[4] *i-Health, Inc. & Martek Biosciences Corp.*, No. C-4486 (F.T.C. Aug. 21, 2014), *available at* https://goo.gl/ERTkEP (viewed Jan. 29, 2016).

7

2.   Clinical Studies Comprehensively Reject CVS's Claims About Algal-900 DHA

25.   Clinical testing and research refute CVS's Algal-900 DHA claims. The American Journal of Clinical Nutrition, a top peer-reviewed medical journal in the field of clinical nutrition, published a 2014 meta-analysis of 34 studies involving 12,999 participants, and concluded that consuming omega-3 fatty acids does not "promote cognitive function in terms of composite memory, executive function, and processing speed domains" and does not "improve[] ... cognitive performance in terms of recognition, immediate and delayed word recall, digit span backward and forward tests, rapid visual information processing, verbal fluency, and simple and choice reaction times."[5]

26.   In 2015, the National Institutes of Health (NIH) published results from their "AREDS2" study, concluding again that omega-3 fatty acids do not affect adults' cognitive functioning and memory.[6] This study followed a 2005 literature review commissioned by NIH and a division of the U.S. Department of Health and Human Services, titled "Effects of Omega-3 Fatty Acids on Cognitive Function with Aging, Dementia, and Neurological Diseases." The NIH found only one study assessing the role of omega-3 fatty acids in maintaining cognitive function in normal aging, and concluded that omega-3 fatty acid consumption showed no association with reduced risk of cognitive impairment or decline.[7]

27.   Plaintiff and the other Class members have been and will continue to be deceived by CVS's false and deceptive advertising claims about Algal-900 DHA's cognitive health benefits and memory improvement.

---

[5] Jiangjiang Jiao et al., *Effect of n-3 PUFA Supplementation on Cognitive Function Throughout the Life Span from Infancy to Old Age: A Systematic Review and Meta-Analysis of Randomized Controlled Trials*, 102 Am. J. Clinical Nutrition 1422 (Dec. 2014), http://goo.gl/ISghfV (viewed Jan. 29, 2016).

[6] Emily Y. Chew et al., *Effect of Omega-3 Fatty Acids, Lutein/Zeaxanthin, or Other Nutrient Supplementation on Cognitive Function*, 314 JAMA 791 (Aug. 25, 2015), http://goo.gl/ySGXDB (viewed Jan. 29, 2016).

[7] NIH, *Omega-3 Fatty Acids and Health: Fact Sheet for Health Professionals*, https://goo.gl/5dUJHr (last updated Oct. 28, 2005).

8

3. The Algal-900 DHA Label Violates Federal Disclaimer Regulations

28. FDA regulations require manufacturers such as CVS to include a mandatory disclaimer statement on the label. 21 C.F.R. § 101.93 (the "disclaimer requirement"). The mandatory disclaimer statement must appear "on each panel or page" where there is a claim. Id. § 101.93(d).

29. The purpose of the disclaimer requirement is to clearly indicate to consumers that a dietary supplement "is not intended to diagnose, treat, cure, or prevent any disease." Id. § 101.93(c).

30. CVS makes claims on both the front and back of its Algal-900 DHA label, which means the disclaimer must appear both on the front and back of the label. It appears only on the back of the label in small and obscured print.

## V. ECONOMIC INJURY

31. When purchasing Algal-900 DHA, Plaintiff sought a product that would improve memory. Plaintiff believed CVS's claims that Algal-900 DHA is clinically shown to improve memory and would improve memory. Plaintiff would not have purchased Algal-900 DHA had he known that CVS's claims were false and misleading.

32. For these reasons, Algal-900 DHA was worth less than what Plaintiff paid for it. Plaintiff lost money as a result of CVS's deception, because he did not receive that for which he paid. Plaintiff altered his position to his detriment, and suffered damages in an amount equal to the amount he paid for Algal-900 DHA.

33. By engaging in its misleading, deceptive, and unlawful marketing, CVS reaped and continues to reap increased sales and profits. CVS knew, or should have known, that its claims about the clinical efficacy of Algal-900 DHA, and its failure to comply with FDA disclaimer requirements, would mislead consumers.

9

## VI.   CLASS ALLEGATIONS

34.   Plaintiff Ferguson brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 for the following Class of persons:

> All persons residing in the State of California who have purchased Algal-900 DHA for their own use or the use of a family member, and not for resale, since February 1, 2010.

Excluded from the Class are all legal entities, Defendant herein and any person, employee, trust, corporation, or other entity related to or affiliated with Defendant, as well as any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

35.   Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

36.   While the exact number of Class members is unknown to Plaintiff at this time, and will be ascertained through appropriate discovery, Plaintiff is informed and believes that there are tens of thousands of members in the proposed Class. The number of individuals who comprise the Class is so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action, rather than in individual actions, will benefit both the parties and the courts.

37.   Plaintiff's claims are typical of the claims of the other members of the Class. All members of the Class have been and/or continue to be similarly affected by Defendant's wrongful conduct as complained of herein, in violation of federal and state law. Plaintiff is unaware of any interests that conflict with or are antagonistic to the interests of the Class.

38.   Plaintiff will fairly and adequately protect the Class members' interests and has retained counsel competent and experienced in consumer class action lawsuits and complex litigation. Plaintiff and its counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff is aware of his duties and responsibilities to the Class.

10

39.     Defendant has acted with respect to the Class in a manner generally applicable to each Class member. Common questions of law and fact exist as to all Class members and predominate over any questions wholly affecting individual Class members. There is a well-defined community of interest in the questions of law and fact involved in the action, which affect all Class members. Among the questions of law and fact common to the Class are, *inter alia*:

a.     Whether Defendant has marketed and advertised Algal-900 DHA as a drug, without the required FDA approval;

b.     Whether Defendant's conduct constitutes misleading and deceptive advertising under CAL. BUS. & PROF. CODE §§ 17500, *et seq.*;

c.     Whether Defendant's conduct constitutes unfair methods of competition and unfair or deceptive acts or practices in violation of CAL. CIV. CODE §§ 1770, *et seq.*;

d.     Whether Defendant misrepresents the results of studies conducted about Algal-900 DHA and its effects on memory and cognition;

e.     Whether Defendant represents that its Algal-900 DHA product is of a particular standard or quality if it is of another;

f.     Whether Defendant advertises its Algal-900 DHA product with intent not to sell it as advertised;

g.     Whether Defendant's conduct constitutes a "unlawful," "unfair," or "fraudulent" business act within the meaning of CAL BUS. & PROF. CODE §§ 17200, *et seq.*;

(i)     Whether Defendant's sale of Algal-900 DHA constitutes "unlawful" or "unfair" business practices by violating the public policies set out in CAL. BUS. & PROF. CODE §§ 1770 *et seq.*, CAL. BUS. PROF. CODE §§ 17500, *et seq.*, and other California and federal statutes and regulations;

11

(ii)   Whether Defendant's sale of its Algal-900 DHA is immoral, unethical, oppressive, unscrupulous or injurious to consumers;

(iii)   Whether Defendant's sale of its Algal-900 DHA constitutes an "unfair" business practice because consumer injury outweighs any countervailing benefits to consumers or competition, and because such injury could not be reasonably avoided by consumers;

h.   The nature and extent of damages, restitution, equitable remedies, and declaratory and injunctive relief to which Plaintiff and the Class are entitled; and

i.   Whether Plaintiff and the Class should be awarded attorneys' fees and the costs of suit.

40.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be small, the expense and burden of individual litigation make it virtually impossible for Class Members to individually redress the wrongs done to them. There will be no difficulty in managing this action as a class action.

41.   Defendant has acted on grounds generally applicable to the entire Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## **FIRST COUNT**

### Violation of CAL. BUS. & PROF. CODE §§ 17500, *et seq.* – Untrue, Misleading and Deceptive Advertising

42.   Plaintiff Ferguson hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

12

43.   At all material times, Defendant engaged in a scheme of offering its Algal-900 DHL product for sale to Plaintiff, and other members of the Class by way of, *inter alia*, commercial marketing and advertising, internet content, product packaging and labelling, and other promotional materials.

44.   These materials, advertisements, and other inducements misrepresented and/or omitted the true effects and benefits of Algal-900 DHL. Said materials, advertisements and other inducements were controlled and emanated from Defendant's headquarters, located in the State of Delaware. Such advertisements and inducements appear on the labels of Defendant's Algal-900 DHL product that are produced at Defendant's manufacturing facility and appear on Defendant's website maintained and controlled from Defendant's headquarters.

45.   Defendant's advertisements and other inducements come within the definition of advertising as contained in CAL. BUS. PROF. CODE §§ 17500, *et seq.*, in that such promotional materials were intended as inducements to purchase Algal-900 DHL and are statements disseminated by Defendant to Plaintiff and other members of the Class.

46.   Defendant knew, or in the exercise of reasonable care should have known, that the statements regarding its Algal-900 DHL product's beneficial effects on cognition and memory were false, misleading, and/or deceptive.

47.   By advertising, marketing, distributing, and/or selling Algal-900 DHA with the deceptive claims detailed above, and without the requisite disclaimer, to Plaintiff and the other Class members, Defendant engaged in, and continues to engage in, deceptive acts and practices.

48.   Consumers, including Plaintiff and members of the Class, necessarily and reasonably relied on Defendant's statements regarding the contents of the Product. Consumers, including Plaintiff and members of the Class, were among the intended targets of such representations.

13

49.     The above acts of Defendant, in disseminating said deceptive statements throughout the State of California to consumers, including Plaintiff and members of the Class are likely to deceive reasonable consumers by obfuscating the true effects or lack of cognitive improvements effectuated by Algal-900 DHL.

50.     Plaintiff and the Class members were harmed and suffered injury as a result of Defendant's violations of the CAL. BUS. & PROF. CODE §§ 17500, *et seq.* Defendant has been unjustly enriched at the expense of Plaintiff and the members of the Class.

51.     Accordingly, Plaintiff and members of the Class seek injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the full extent permitted by law.

## SECOND COUNT

### Violation of CAL. CIV. CODE §§ 1750, *et seq.* – Misrepresentation of a Product's standard, quality, sponsorship, approval, and/or certification

52.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

53.     Defendant's Algal-900 DHL product is a "good" as defined by CAL. CIV. CODE § 1761(a).

54.     Defendant is a "person" as defined by CAL. CIV. CODE § 1761(c).

55.     Plaintiff Ferguson and the Class members are "consumers" within the meaning of CAL. CIV. CODE § 1761(d) because they purchased the Algal-900 DHL product for personal, family or household use.

56.     The sale of Defendant's Algal-900 DHL to Plaintiff Ferguson and the Class members is a "transaction" as defined by CAL. CIV. CODE § 1761(e).

57.     By labeling their Algal-900 DHL product as "clinically shown to improve memory" Defendant violated CAL. CIV. CODE §§ 1770(a)(2), (5), (7), and (9),

14

as it misrepresented the standard, quality, sponsorship, approval, and/or certification of its Algal-900 DHL product.

58.     By labeling their Algal-900 DHL product as the "only DHA form with clinical proof of efficacy, capable of reducing errors "50% or more" in an "episodic memory test," Defendant violated CAL. CIV. CODE §§ 1770(a)(2), (5), (7), and (9), as it misrepresented the standard, quality, sponsorship, approval, and/or certification of its Algal-900 DHL product.

59.     Plaintiff Ferguson and Class members were harmed and suffered actual damages as a result of Defendant's unfair competition and deceptive acts and practices.  Had Defendant disclosed and/or not falsely represented its Algal-900 DHL products' cognition and memory benefits and effects, Plaintiff Ferguson and the California Class members would not have been misled into purchasing Defendant's Algal-900 DHL product, or alternatively, would have paid significantly less for them.

60.     Additionally, misbranded drug products cannot legally be manufactured, held, advertised, distributed or sold.  Thus, misbranded drug products have no economic value and are worthless as a matter of law, and purchasers of misbranded drug products are entitled to a refund of the purchase price of the misbranded drug.

61.     Plaintiff Ferguson, on behalf of himself and all other similarly situated California consumers, and as appropriate, on behalf of the general state of California, seeks injunctive relief prohibiting Defendant from continuing these unlawful practices pursuant to CAL. CIV. CODE § 1782(a)(2).

62.     Plaintiff Ferguson provided Defendant with notice of its alleged violations of CLRA pursuant to CAL. CIV. CODE § 1782(a) *via* certified mail, demanding that Defendant correct such violations.

63.     If Defendant fails to respond to Plaintiff's CLRA notice within 30 days, Plaintiff Ferguson may amend this Complaint to seek all available damages under the CLRA for all violations complained of herein, including, but not limited to, statutory

15

1 | damages, punitive damages, attorney's fees and costs, and any other relief that the
2 | Court deems proper.

### THIRD COUNT

#### Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* – Unfair Business Acts and Practices

64.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

65.     Plaintiff and other members of the Class who purchased Algal-900 DHA suffered a substantial injury by virtue of buying a product that misrepresented and/or omitted true cognitive effects and benefits on memory. Had Plaintiff and members of the Class known that Defendant's materials, advertisement, and other inducements misrepresented and/or omitted the true effects and benefits of Algal-900 DHL, they would not have purchased said products.

66.     Defendant's actions alleged herein violate the laws and public policies of California and the federal government, as set out in the preceding paragraphs of this Complaint.

67.     There is no benefit to consumers or competition by allowing Defendant to deceptively market, advertise, package, and label Algal-900 DHL.

68.     Plaintiff and Class members who purchased Defendant's Algal-900 DHL had no way of reasonably knowing that these products were deceptively marketed, advertised, packaged, and labeled. Thus, Class members could not have reasonably avoided the injury they suffered.

69.     The gravity of the harm suffered by Plaintiff and Class members who purchased Defendant's Algal-900 DHL outweighs any legitimate justification, motive or reason for marketing, advertising, packaging, and labeling the Algal-900 DHL product in a deceptive and misleading manner. Accordingly, Defendant's actions are immoral, unethical, unscrupulous, and offend the established public policies as set out

16

in federal regulations and are substantially injurious to Plaintiff Ferguson and members of the Class.

70.     The above acts of Defendant, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Plaintiff and members of the Class, were and are likely to deceive reasonable consumers by obfuscating the true effects and benefits of Algal-900 DHL, and thus were violations of CAL. BUS. PROF. CODE §§ 17500, *et seq.*

71.     Misbranded drug products cannot legally be manufactured, held, advertised, distributed, or sold. Thus, misbranded drug products have no economic value and are worthless as a matter of law, and purchasers of misbranded drug products are entitled to a restitution refund of the purchase price of the misbranded drug product.

72.     As a result of Defendant's above unlawful, unfair, and fraudulent acts and practices, Plaintiff, on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general public, seek injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law.

## FOURTH COUNT

### Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* – Fraudulent Business Acts and Practices

73.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

74.     Such acts of Defendant as described above constitute a fraudulent business practice under CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

75.     As more fully described above, Defendant mislabels Algal-900 DHL by claiming that it is "clinically show to improve memory," and is the only DHA form

with clinical proof of efficacy, capable of reducing errors "50% or more" in an "episodic memory test."  In claiming these benefits of Algal-900 DHL, Defendant falsely relies on a short-term study conducted by in-house scientists of Martek, a study which the Federal Trade Commission has concluded to not support any claims that DHA improves memory of cognitive function. Defendant's misleading marketing, advertising, packaging, and labeling are likely to, and do, deceive reasonable consumers. Indeed, Plaintiff Ferguson was deceived about the cognitive benefits of Defendant's Algal-900 DHL, as Defendant's marketing, advertising, packaging, and labeling of the Product misrepresent and/or omit its true effect and benefits. Said acts are fraudulent business practice and acts.

76.    Defendant's misleading and deceptive practices caused Plaintiff to purchase Defendant's Algal-900 DHL and/or pay more than he would have otherwise had he known the true nature, effects, and benefits of Algal-900 DHL.

77.    Misbranded drug products cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded food has no economic value and is worthless as a matter of law, and purchasers of misbranded drug products are entitled to a restitution refund of the purchase price of the misbranded drug.

78.    As a result of Defendant's above unlawful, unfair, and fraudulent acts and practices, Plaintiff, on behalf of himself and all others similarly situated, and as appropriate, on behalf of the general public, seeks injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law.

## FIFTH COUNT

### Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* – Unlawful Business Acts and Practices

79.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

18

80.   Defendant's conduct constitutes unlawful business acts and practices under CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

81.   Defendant sold Misbranded Drug Products in California during the class period.

82.   Defendant CVS is a corporation and, therefore, is a "person" within the meaning of the Sherman Food Drug & Cosmetic Law, California Health & Safety Code §§ 109875, *et seq.* (the "Sherman Act"). The Sherman Act adopts, incorporates and is identical to the federal Food, Drug & Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* ("FDCA").

83.   The Sherman Law provides that a drug product is misbranded "if its labeling is false or misleading in any particular." HEALTH & SAF. CODE § 111330.

84.   Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the advertising provisions of Chapter 3 of the Sherman Act and the misbranded drug provisions of Chapter 6.

85.   Defendant's business practices are unlawful under CAL. BUS. & PROF. Code §§ 17200, *et seq.* by virtue of Defendant's violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

86.   Defendant's business practices are unlawful under CAL. BUS. & PROF. CODE §§ 17200, *et seq.* by virtue of Defendant's violations of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*

87.   Under California law, a drug product that is misbranded cannot legally be manufactured, advertised, distributed, held, or sold. Indeed the sale, purchase, and possession of misbranded food is a criminal act in California and the FDA even threatens companies with seizure of misbranded products. Moreover, misbranded products have no economic value, and are legally worthless.

88.   Defendant sold Plaintiff and members of the Class misbranded products that were not capable of being sold or legally held and which had no economic value

19

and were legally worthless. Plaintiff and each Class member paid a premium price for misbranded products.

89.    As a result of Defendant's illegal business practices, Plaintiff and the members of the Class are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any Class member any money paid for the misbranded product.

90.    Defendants' unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and each member of the Class.

## **PRAYER FOR RELIEF`**

WHEREFORE, Plaintiff and the Class pray for relief and judgment as follows:

91.    For an order declaring that this action is properly maintained as a class action and appointing Plaintiff as representative for the Class, and appointing Plaintiff's counsel as Class counsel;

92.    That Defendant bear the costs of any notice sent to the Class;

93.    For an order awarding Plaintiff and the members of the Class actual damages, restitution, and/or disgorgement;

94.    For an order enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

95.    For restitution of the funds that unjustly enriched Defendant at the expense of the Plaintiff and Class Members;

96.    For an order awarding Plaintiff and the members of the Class pre- and post-judgment interest;

97.    An order requiring Defendant to pay actual damages to Plaintiff and all members of the Class;

98.    For an order awarding attorneys' fees and costs of suit, including expert witnesses' fees as permitted by law; and

CLASS ACTION COMPLAINT

1    99.    Such other and further relief as this Court may deem just and proper.

2

3                                **JURY DEMAND**

4         Plaintiff demands a trial by jury for all of the claims asserted in this Complaint

5    so triable.

6

7    DATED: July 5, 2018                        Respectfully submitted,

8                                               FINKELSTEIN & KRINSK LLP

9                                               By:  /s/ Trenton R. Kashima
10                                                   Trenton R. Kashima

11                                              Jeffrey R. Krinsk, Esq.
                                                Trenton R. Kashima, Esq.
12                                              550 West C St., Suite 1760
                                                San Diego, CA 92101-3593
13                                              Telephone:  (619) 238-1333
                                                Facsimile:   (619) 238-5425

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT