**CENTER FOR SCIENCE
IN THE PUBLIC INTEREST**
Maia Kats (to be admitted *pro hac vice*)
(DC Bar No. 422798; NY Bar No. 2261592)
*mkats@cspinet.org*
Matthew Simon (to be admitted *pro hac vice*)
(DC Bar No. 144727; NY Bar No. 5447222)
*msimon@cspinet.org*
1220 L Street, NW, Suite 300
Washington, District of Columbia 20005
Telephone: (202) 777-8381
Facsimile: (202) 265-4954

**REESE LLP**
Michael R. Reese (SBN 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**MEHRI & SKALET, PLLC**
Craig L. Briskin (to be admitted *pro hac vice*)
(DC Bar No. 980841; NY Bar No. 3028784; MA Bar No. B640963)
*cbriskin@findjustice.com*
1250 Connecticut Avenue, NW, Suite 300
Washington, District of Columbia 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997

*Counsel for Proposed Intervenors Jeffrey Worth and Robert Burns*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LES FERGUSON, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC.,<br><br>Defendant. | No. 3:18-cv-01529-JLS-MDD<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AND TO TRANSFER OR, IN THE ALTERNATIVE, TO STAY THIS ACTION PURSUANT TO THE FIRST-TO-FILE RULE**<br><br>Date: Oct. 25, 2018<br>Time: 1:30 PM<br>Courtroom: 4D<br>Judge: Hon. Janis L. Sammartino |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii
INTRODUCTION ..................................................................................................... 1
PROCEDURAL AND FACTUAL BACKGROUND ............................................... 3
I.   THE *WORTH* CASE .................................................................................... 3
II.  THE *ALIANO* CASE .................................................................................... 4
III. DISMISSAL OF *ALIANO* CASE, APPOINTMENT OF INTERIM CO-LEAD COUNSEL, AND PLANNED SETTLEMENT NEGOTIATIONS ... 5
IV.  THE *FERGUSON* CASE ............................................................................. 6
ARGUMENT .............................................................................................................. 7
I.   LEGAL STANDARD ................................................................................... 7
II.  THE COURT SHOULD PERMIT *WORTH* PLAINTIFFS TO INTERVENE AS A MATTER OF RIGHT ...................................................... 8
     A.  This Application Is Timely ................................................................. 8
     B.  The Disposition of this Litigation Threatens the Proposed Intervenors' Protected Interests ........................................................... 9
     C.  Ferguson Does Not Adequately Represent *Worth* Plaintiffs' Interests ............................................................................................. 12
III. ALTERNATIVELY, THE COURT SHOULD PERMIT *WORTH* PLAINTIFFS TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(b) ................................................................................... 13
IV.  THE COURT SHOULD TRANSFER OR STAY THIS ACTION UNDER THE FIRST-TO-FILE RULE ....................................................... 14
CONCLUSION ........................................................................................................ 16

# TABLE OF AUTHORITIES

**CASES**

*Aliano v. CVS Pharmacy, Inc.*, No. 16 Civ. 2624 (FB) (SMG),
  2018 WL 3625336 (E.D.N.Y. May 21, 2018) ............................................... 4, 5, 10

*Alltrade, Inc. v. Uniweld Prod., Inc.*,
  946 F.2d 622 (9th Cir. 1991) .......................................................................... 8

*Am. Newland Communities, L.P. v. Axis Specialty Ins. Co.*, No. 11 Civ. 1217,
  2011 WL 5359335 (S.D. Cal. Nov. 7, 2011) ...................................................... 8

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) ..................................................................... 7, 12

*Bhd. of Locomotive Eng'rs v. Chicago, M., St. P. & P. R. Co.*,
  34 F. Supp. 594 (E.D. Wis. 1940) .................................................................. 13

*Cadle Co. v. Whataburger of Alice, Inc.*,
  174 F.3d 599 (5th Cir. 1999) ........................................................................... 8

*Cedars-Sinai Med. Ctr. v. Shalala*,
  125 F.3d 765 (9th Cir. 1997) ........................................................................... 8

*Herman v. YellowPages.Com, LLC*, No. 10 Civ. 195 (JAH) (AJB),
  2011 WL 1615174 (S.D. Cal. Mar. 29, 2011) .................................................. 14

*Hubbard v. Elec. Arts, Inc.*, No. 09 Civ. 233 (RG),
  2011 WL 3469118 (E.D. Tenn. Aug. 5, 2011) ................................................. 12

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*,
  544 F. Supp. 2d 949 (N.D. Cal. 2008) ............................................................ 15

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*,
  787 F.3d 1237 (9th Cir. 2015) ..................................................................... 8, 15

*Manier v. L'Oreal USA, Inc.*, No. 16 Civ. 6886 (ODW) (KS),
  2017 WL 59066 (C.D. Cal. Jan. 4, 2017) ........................................... 9, 13, 14, 15

*Orange Cty. v. Air California*,
  799 F.2d 535 (9th Cir. 1986) ....................................................................... 7, 13

*Reynolds v. Beneficial Nat. Bank*,
  288 F.3d 277 (7th Cir. 2002) ........................................................................ 1, 12

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972) ....................................................................................... 12

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) ........................................................................... 9

*Widjaja v. YUM! Brands, Inc.*, No. 09 Civ. 1074 (OWW) (DLB),
  2009 WL 3462040 (E.D. Cal. Oct. 22, 2009) ...................................................................... 11

*Z-Line Designs, Inc. v. Bell'O Int'l, LLC*,
  218 F.R.D. 663 (N.D. Cal. 2003) ........................................................................................ 8

**OTHER AUTHORITIES**

Emily Field, *Deal in CVS False Ad Suit Shouldn't Get OK, Judge Says*, Law
  360, May 21, 2018, https://www.law360.com/articles/1045837 ............................. 6

Federal Rule of Civil Procedure 23 ................................................................................passim

Federal Rule of Civil Procedure 24 ................................................................................passim

Jane E. Brody, *They Took on the Food Giants—and Won*, NY Times (Jan. 1,
  2018), https://goo.gl/k1NHAq ........................................................................................ 1, 3

# INTRODUCTION

In February 2016, Jeffrey Worth and Robert Burns were the first to file a proposed class action against CVS Pharmacy, Inc., alleging that CVS falsely claimed that its Algal-900 DHA supplement was clinically shown to improve memory.[1] *Worth v. CVS Pharmacy, Inc.*, No. 16 Civ. 498-FB-SMG (E.D.N.Y.). The *Worth* Complaint represents months of original legal and scientific research concerning CVS's product. Counsel in *Worth* ("*Worth* Counsel") is the Center for Science in the Public Interest ("CSPI"), a non-profit organization with over 40 years of experience in advocating for truth in labeling and advertising of food and nutritional supplements.[2] Mehri & Skalet, PLLC and Reese LLP are also co-counsel for *Worth* Plaintiffs.

On June 18, 2018, following two years of skirmishes with CVS over what the *Worth* Plaintiffs characterize as an attempted "reverse-auction"[3] settlement of a copycat suit, which suit was filed originally in Illinois before being transferred, the court appointed *Worth* Counsel as interim co-lead counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure for the putative national class of Algal-900 DHA purchasers. The court also denied CVS and the copycat plaintiff preliminary approval of their proposed settlement, and directed that *Worth* Plaintiffs and CVS alert it of any new complaints filed against CVS in any court concerning the product. This was prescient: the day after this comprehensive defeat, the copycat plaintiff's counsel

---

[1] Worth and Burns, together, are "*Worth* Plaintiffs" and CVS Pharmacy, Inc. is "CVS."

[2] *See, e.g.*, Jane E. Brody, *They Took on the Food Giants—and Won*, NY Times (Jan. 1, 2018), https://goo.gl/k1NHAq (describing CSPI's decades of successful activism to improve nutrition and health).

[3] A reverse auction is "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002).

*publicly pledged* to pursue the settlement with a new plaintiff in another court, and shortly thereafter, this copycat action was filed.

Plaintiffs and CVS have a formal mediation scheduled for next month, after which they will submit a status report to the court. Their last mediation failed because, simultaneous to mediating with the *Worth* Plaintiffs, CVS negotiated and reached resolution with a copycat plaintiff. While that settlement ultimately was roundly rejected by the court, it took two years of wasting judicial and other resources and, at least equally, prejudiced the putative class of elderly consumers who continue to be deceived in the interim.

The *Worth* Plaintiffs bring this motion to intervene pursuant to Federal Rule of Civil Procedure 24, and to transfer or stay this action under the first-to-file rule. Granting this motion will best serve the interests of the class in optimizing its monetary recovery, enjoining CVS's labeling violations, and deterring future misconduct. The *Worth* Plaintiffs finally have the opportunity to represent the best interests of the class, including during the resumption of settlement talks, and do not wish that history repeat itself. Even though Mr. Ferguson filed his complaint well over two years after the *Worth* Complaint, the *Ferguson* Complaint copies much of the *Worth* Complaint word for word, and he seeks to represent a class of consumers subsumed by the *Worth* Case.

The *Worth* Plaintiffs seek to intervene under Federal Rule of Civil Procedure 24 because they have interests that would be inadequately represented in the *Ferguson* copycat action. In order to avoid duplication of efforts, judicial waste, additional delay, and the potential for conflicting rulings, the Court should apply the first-to-file rule and transfer *Ferguson* to join the earlier-filed *Worth* Case in the Eastern District of New York or, alternatively, stay this action.

# PROCEDURAL AND FACTUAL BACKGROUND

## I. THE *WORTH* CASE

The *Worth* Plaintiffs filed a class action complaint against CVS on February 1, 2016, alleging that the labeling of its Algal-900 DHA product is false and misleading because it falsely claims the product is clinically shown to improve memory. *See* Complaint, *Worth*, ECF No. 1, Ex. A.[4] *Worth* Counsel spent half a year researching the facts and law before filing this action as reflected by the detailed allegations in the Complaint. *See* Decl. of Maia C. Kats, Esq., ¶ 8, Ex. B. During that time, scientists at CSPI (a non-profit consumer advocacy organization armed with litigators and scientists) exhaustively read the scientific research relating to the product at issue, in particular, and more generally have over 40 years of experience in advocating for truth in the labeling and advertising of food and nutritional supplements. *See id.* ¶¶ 4–8. *See also* Jane E. Brody, *They Took on the Food Giants— and Won*, NY Times (Jan. 1, 2018), https://goo.gl/k1NHAq.

*Worth* Plaintiffs cite and analyze a variety of studies finding no effect of omega-3 fatty acid supplements on memory and cognitive function. *Worth* Complaint ¶¶ 3–4, 28–30, Ex. A. In addition, the *Worth* Plaintiffs allege that the small-scale, limited study on which CVS relies for its claims, the "MIDAS study," was funded and conducted by in-house employees of Martek, a nutritional supplements company who also supplies the ingredients for CVS's product. *Id.* ¶¶ 5, 20–27. The Federal Trade Commission ("FTC") concluded that the MIDAS Study does "not reveal any improvement in working memory" and that "clinical-proof claims [based on the study] are false and misleading." *Id.* ¶ 21. On that basis, it enjoined Martek from

---

[4] Docket entries in this Memorandum of Law are cited as follows: *Worth v. CVS Pharmacy, Inc.*, No. 16 Civ. 498 (FB) (SMG) (E.D.N.Y.) ("*Worth*, ECF No."); *Aliano v. CVS Pharmacy, Inc.*, No. 16 Civ. 2624 (FB) (SMG) (E.D.N.Y.) ("*Aliano*, ECF No."); and *Ferguson v. CVS Pharmacy Inc.*, No. 18 Civ. 1529 (JLS) (MDD) (S.D. Cal.) ("*Ferguson*, ECF No.").

continuing to make any such claims, and Martek pulled its own product from the market. *Id.* ¶ 25–26. Yet CVS continued marketing its own Martek-supplied Omega-3 product with the same misleading claims. *Id.* ¶ 27. *Worth* Plaintiffs also claim the product label is false and misleading because its disclaimer that the product has not been approved to treat any disease does not comply with federal law. *Id.* ¶¶ 31–33. The *Worth* Complaint includes claims for relief under the consumer protection laws of New York and Florida and under the common law on behalf of a nationwide class of purchasers. *Id.* ¶¶ 68–105.

## II. THE *ALIANO* CASE

Plaintiff Mario Aliano filed a class action complaint in Cook County Circuit Court on February 11, 2016, ten days after the *Worth* Complaint was filed. *See Aliano*, ECF No. 1. CVS removed the case to the United States District Court for the Northern District of Illinois on March 16, 2016. *Id.*

As set forth in The Honorable Steven M. Gold's Report and Recommendation, like the instant action, Aliano's allegations were essentially the same as those in the *Worth* Case. *Aliano v. CVS Pharmacy, Inc.*, No. 16 Civ. 2624 (FB) (SMG), 2018 WL 3625336, at *6 (E.D.N.Y. May 21, 2018). In April 2016, while the *Worth* Plaintiffs "were in the midst of mediator-assisted negotiations with CVS," Aliano and CVS brought a motion for preliminary approval of a proposed class action settlement in Illinois, "rush[ing] to reach a settlement before *Worth* plaintiffs could conclude their negotiations." *Id.* at *6. Moving under the first-to-file rule, the *Worth* Plaintiffs successfully intervened in the Illinois action and had the *Aliano* Case transferred to the Eastern District of New York, where Aliano and CVS again moved for preliminary approval of the proposed settlement. *Aliano*, ECF Nos. 16, 30, 42.

### III.  DISMISSAL OF *ALIANO* CASE, APPOINTMENT OF INTERIM CO-LEAD COUNSEL, AND PLANNED SETTLEMENT NEGOTIATIONS

The *Worth* Plaintiffs litigated their objection to the *Aliano* settlement for over two years, urging the court to reject the procedurally infirm and substantively unfair proposed settlement agreement. During that time, the court allowed *Worth* Plaintiffs to take discovery of Aliano's counsel and to take Mr. Aliano's deposition. *See* Ex. C (*Aliano* Docket Sheet); Ex. D (*Worth* Docket Sheet); *Aliano*, 2018 WL 3625336, at *1 n.1, 3–4. The *Worth* Plaintiffs' investigation revealed, among other things, numerous conflicts of interest between Aliano and his counsel, leading Judge Gold to conclude that Aliano was an inadequate class representative and recommend that the district judge deny preliminary approval. *See Aliano*, 2018 WL 3625336, at *6–8. Following Judge Gold's Report and Recommendation, Aliano dismissed his lawsuit on June 4, 2018. Stipulation of Dismissal, *Aliano*, ECF No. 117.

Concerned that Aliano's counsel would secure a new class representative and seek to resubmit the proposed settlement for approval, *Worth* Plaintiffs' renewed a previously filed request for *Worth* Counsel to be appointed interim co-lead counsel. *See* Letter Renewing FRCP 23(G) Motion, *Worth*, ECF No. 89. On June 18, 2018, Judge Gold granted that request, recognizing *Worth* Counsel's competency and experience as well as the necessity of consistent direction and leadership in prosecuting the class' claims. *See* Motion to Appoint Interim Co-Lead Counsel, *Worth*, ECF 18; *Worth*, Minute Entry June 18, 2018. As interim co-lead counsel, *Worth* Counsel is authorized to "act on behalf of . . . the plaintiffs in all subsequently filed actions" and was granted "exclusive authority to negotiate any settlement on behalf of the proposed class." Interim Co-Lead Counsel Order, *Worth*, ECF 18-2, Ex. E.

With the *Aliano* Case dismissed and *Worth* Counsel appointed as interim class counsel, *Worth* Plaintiffs are now seeking to engage in meaningful settlement

negotiations with CVS. The *Worth* Plaintiffs and CVS are scheduled to participate in private mediation before David Geronemus of JAMS on October 18, 2018. *See* Letter Regarding Mediation, *Worth*, ECF No. 93.

## IV. THE *FERGUSON* CASE

Approximately one month after the *Aliano* Case was dismissed and two weeks after *Worth* Counsel was appointed interim co-lead counsel, Ferguson filed the instant action. *See* Complaint, *Ferguson*, ECF No. 1. There is no question that the *Ferguson* Complaint copied the *Worth* Plaintiffs' work product, legal theories, and factual allegations. For example, both complaints contain the same sentence, word for word: "In a 2014 report published in a top peer-reviewed clinical nutrition journal, researchers conducted an extensive meta-analysis of 34 randomized, controlled trials of omega-3 fatty acids, involving 12,999 subjects, and concluded that omega-3 fatty acids 'do not improve cognitive performance in children, adults, or the elderly.'" *Compare Worth* Complaint ¶ 2, Ex. A, *with Ferguson* Complaint ¶ 3. Ferguson's complaint even copies the photographs that *Worth* Counsel took of the product. *Compare Worth* Complaint ¶ 16, Ex. A, *with Ferguson* Complaint ¶ 17. The *Worth* Plaintiffs are unaware of any relationship or communications between Aliano counsel and Ferguson counsel, but they are mindful of Mr. Zimmerman's public statement after preliminary approval was denied: "We intend to substitute a new class representative and resubmit the settlement for approval. This ruling merely delays the eventual distribution of the settlement proceeds to the class." Letter Renewing FRCP 23(g) Motion, *Worth*, ECF No. 89 (quoting Emily Field, *Deal in CVS False Ad Suit Shouldn't Get OK, Judge Says*, Law 360, May 21, 2018, https://www.law360.com/articles/1045837).

Given the history of this case, the *Worth* Plaintiffs have good reason to be concerned about the possibility that CVS will enter into a reverse auction settlement

- 6 -                                                                    Case No. 18cv1529
MEM. IN SUPP. OF MOT. TO INTERVENE AND TRANSFER OR STAY

with Ferguson.[5] The Court can prevent this unfortunate situation from recurring by granting the relief the *Worth* Plaintiffs seek.

## ARGUMENT

### I. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 24(a)(2), courts "must permit anyone to intervene who," upon a timely motion, "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). "A party seeking to intervene as of right must meet four requirements: (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). Rule 24(a)(2) "traditionally receives liberal construction in favor of applicants for intervention." *Id.*

Pursuant to Federal Rule of Civil Procedure 24(b), courts "may permit anyone to intervene who" files a timely motion and who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "Permissive intervention is committed to the broad discretion of the district court." *Orange Cty. v. Air California*, 799 F.2d 535, 539 (9th Cir. 1986). In exercising that discretion, the court must consider whether the intervention will "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

---

[5] Notably, CVS has not sought an extension to answer or move in this case and, indeed, according to the docket, has not defended itself against the Complaint.

Under the first-to-file rule, "when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case . . . ." *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997). When applying the rule, "courts should be driven to maximize 'economy, consistency, and comity.'" *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)). Moreover, given the import of the rule's underlying purposes, "[t]he first-to-file rule . . . 'should not be disregarded lightly.'" *Id.* (quoting *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)).

Courts analyze three factors when determining whether to transfer or stay a case pursuant to the first-to-file rule: "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Am. Newland Communities, L.P. v. Axis Specialty Ins. Co.*, No. 11 Civ. 1217 (JLS) (WMC), 2011 WL 5359335, at *1 (S.D. Cal. Nov. 7, 2011) (Sammartino, J.) (quoting *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003)).

For the reasons set out below, the *Worth* Plaintiffs seek to intervene as a matter of right pursuant to Rule 24(a)(2), or , alternatively, they seek permission to intervene pursuant to Rule 24(b), to determine whether the Court should apply the well-established first-to-file rule and stay or transfer the *Ferguson* Action.

**II. THE COURT SHOULD PERMIT *WORTH* PLAINTIFFS TO INTERVENE AS A MATTER OF RIGHT**

    **A.    This Application Is Timely**

There is no question that this motion is timely. The *Ferguson* Complaint was filed a mere two months ago, and there has been no progress in the case thus far other than service of the complaint. Accordingly, there cannot be any prejudice to the parties resulting from the delay. More, the *Worth* Plaintiffs have acted diligently and

- 8 -     Case No. 18cv1529

promptly to protect their interests. Any delay was fully justified by the time necessary for the *Worth* Plaintiffs to learn of this copycat action, assess their options, and file the instant motion. *See Manier v. L'Oreal USA, Inc.*, No. 16 Civ. 6886 (ODW) (KS), 2017 WL 59066, at *2 (C.D. Cal. Jan. 4, 2017) (holding that the motion to intervene was timely because no "dispositive motions were filed . . . and the case [had not] progress[ed] in any significant way"); *see also United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (setting forth the factors courts weigh in determining whether a motion to intervene is timely, including the stage of proceedings, prejudice, and reason for delay).

### B. The Disposition of this Litigation Threatens the Proposed Intervenors' Protected Interests

The *Worth* Plaintiffs were the first filers and have been appointed interim lead counsel, yet this case could move towards settlement without their participation. This litigation clearly threatens their interests.

A proposed intervenor's interest supports intervention as a matter of right so long as the applicant "has a significantly protectable interest . . . protected by law and there is a relationship between the legally protected interest and the plaintiff's claims." *Alisal Water Corp.*, 370 F.3d at 919. A "non-speculative, economic interest may be sufficient to support a right of intervention." *Id.*

Here, the *Worth* Plaintiffs have four cognizable interests that may be impaired by the disposition of the *Ferguson* Case: (1) application of the first-to-file rule; (2) avoiding inconsistent rulings and delay, expense, and wasted efforts; (3) negotiating a nationwide settlement without the coercive impact of this action; and (4) protecting the economic and legal interests of themselves and the putative nationwide class, which risk being compromised by an inadequate settlement reached between a copycat filer and a corporation eager to settle this matter on the most favorable terms.

First, the *Worth* Plaintiffs' claims on behalf of a nationwide class subsume the class of consumers Ferguson seeks to represent. Allowing Ferguson to proceed in this manner would engender the harms to the class that the first-to-file rule exists to prevent, including needless duplication of effort and expense by multiple attorneys, a lack of consistent direction and leadership in prosecuting the class's claims, and the potential for the defendant to secure a non-optimal settlement. *See infra* Part IV. As both members and representatives of the putative class, the *Worth* Plaintiffs have a real, practical interest in applying the first-to-file rule here and for this Court to give comity to the order appointing *Worth* Counsel as interim co-lead counsel with exclusive authority to negotiate for the alleged class.

Second, regardless of what is the just and proper outcome of this dispute, there should be one outcome, not two. If the *Ferguson* Case were to proceed through motion practice, discovery, and class certification, there are significant risks of inconsistent rulings between the two courts. Further, such efforts will be entirely duplicative, wasting attorney and judicial resources.

Third, as described above, the *Worth* Plaintiffs anticipate imminently entering mediator-assisted settlement negotiations with CVS. The history of these cases shows the willingness of CVS to use the pendency of two cases to its advantage. As it has already done, CVS will undoubtedly utilize this pending action to weaken the *Worth* Plaintiffs' settlement position, positing that, if *Worth* Plaintiffs do not agree to its low-ball offer, it will present the offer to Ferguson.

Fourth, as it did in *Aliano*, CVS may negotiate around the *Worth* Plaintiffs and, following an amendment to the *Ferguson* Complaint, propose a class action settlement on behalf of a nationwide class substantially similar to the settlement Judge Gold recommended be denied preliminary approval. *See Aliano*, 2018 WL 3625336, at *8; Aliano Proposed Settlement, *Aliano*, ECF No. 100-2, Ex. F. It was this exact concern that led Judge Gold to appoint *Worth* Counsel interim co-lead

- 10 -                    Case No. 18cv1529
MEM. IN SUPP. OF MOT. TO INTERVENE AND TRANSFER OR STAY

counsel to negotiate exclusively for the class. *See* Letter Renewing FRCP 23(G) Motion, *Worth*, ECF No. 89; *Worth*, Minute Entry June 18, 2018; Interim Co-Lead Counsel Order, Ex. E. The *Worth* Plaintiffs have already pointed to multiple deficiencies in the Aliano Proposed Settlement, including the lack of a common fund, failure to provide automatic payments to class members who purchased the product using CVS loyalty cards, and insufficient injunctive relief. *See* Objections to Aliano Proposed Settlement, *Aliano*, ECF Nos. 58 at 18–35; 97 at 1–2. Judge Gold recognized these concerns, noting at an October 23, 2017 court hearing, "[i]t would really make me happy to see you go to an automatic refund on the extra care cards." Transcript of October 23, 2017 Proceedings, *Aliano*, ECF No. 94 at G186–G187, Ex. G. The opportunity to object to such a settlement will not sufficiently protect the *Worth* Plaintiffs' interest. The two years of litigation leading to the eventual dismissal of the *Aliano* Case amply demonstrate that the *Worth* Plaintiffs will be prejudiced by any such legal battle.

Numerous courts have allowed first-filed plaintiffs to intervene in similar circumstances. In *Widjaja v. YUM! Brands, Inc.*, No. 09 Civ. 1074 (OWW) (DLB), 2009 WL 3462040 (E.D. Cal. Oct. 22, 2009), the plaintiffs in earlier-filed cases moved to intervene as of right and strike the class actions or stay the overlapping claims. *See* 2009 WL 3462040, at *3. The proposed intervening plaintiffs in *Widjaja* asserted they had protectable interests in (a) ensuring the protection of their claims from inconsistent rulings and in the expeditious prosecution of their action against the defendants and (b) avoiding "further complications, delay, and wasted judicial and party resources" by allowing the late-filed action to proceed. *Id.* at *3–4. The court agreed, holding the intervening plaintiffs had "a significant protectable interest in this litigation; because of the possibility of inconsistent rulings, disposition of this action without intervention may impair or impede [the intervening plaintiffs'] ability to protect that interest." *Id.* at *7; *see also Hubbard v. Elec. Arts, Inc.*, No. 09 Civ.

233 (RG), 2011 WL 3469118, at *3–4 (E.D. Tenn. Aug. 5, 2011) (permitting putative class member in first-filed case to intervene, noting differences in the plaintiffs' approaches to calculating damages). And of course, a federal court in Chicago granted the *Worth* Plaintiffs' motion to intervene and transfer the *Aliano* case to the Eastern District of New York over two years ago.

### C. Ferguson Does Not Adequately Represent *Worth* Plaintiffs' Interests

A party seeking intervention as of right must only make a showing that the representation "may be" inadequate, and "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Courts in this Circuit "consider[] three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086.

The test is readily met here. Most concretely, no party in this action is "capable and willing" to seek to transfer or stay this action under the first-to-file rule. CVS, who is undoubtedly looking to negotiate a "weak settlement" with "the most ineffectual class lawyers," *Reynolds*, 288 F.3d at 282, only benefits from this copycat action. Further, and for this same reason, CVS has no motivation to take discovery of Ferguson or his counsel to investigate their adequacy. The *Worth* Plaintiffs' intervention in the *Aliano* Case demonstrates the import of such discovery.

Finally, as a copycat filer who has conducted no original scientific, legal, or factual research for the action, Ferguson will not adequately represent *Worth* Plaintiffs' interests at the negotiating table or in litigation. In contrast to Ferguson, the *Worth* Plaintiffs have spent considerable time, effort, and resources researching

and becoming knowledgeable of the facts and legal issues surrounding the claims in this litigation. Indeed, *Worth* Counsel spent half a year researching the facts and law before filing this action. *See, e.g.*, Kats Decl. ¶ 8, Ex. B. As noted above, it was this extensive experience and investigation that led Judge Gold to appoint *Worth* Counsel interim co-lead counsel.

### III. ALTERNATIVELY, THE COURT SHOULD PERMIT *WORTH* PLAINTIFFS TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(b)

Even if the Court were to find reason not to grant intervention as of right, Rule 24(b) vests district courts with "broad discretion" when deciding whether to permit intervention by parties seeking to protect their interests. *Orange Cty.*, 799 F.2d at 539. The Court should construe Rule 24(b) to serve the objective of avoiding a "multiplicity of suits." *Bhd. of Locomotive Eng'rs v. Chicago, M., St. P. & P. R. Co.*, 34 F. Supp. 594, 596 (E.D. Wis. 1940) ("The new rules [including Rule 24(b)] should have a liberal construction, and one of the objects sought by these rules was to avoid a multiplicity of suits. All related controversies should, as far as possible, be settled in one action."). Indeed, several Courts have permitted intervention pursuant to Rule 24(b) under similar circumstances. *See Manier*, 2017 WL 59066, at *2–3 (permitting first-filed plaintiff to intervene under Rule 24(b)); Order on Motion to Intervene and Transfer, *Aliano*, ECF No. 30 (same).

As discussed above, *Worth* Plaintiffs' motion is timely. Further, *Worth* Plaintiffs' claims, which were copied by Ferguson, are virtually identical to the claims in this case. Indeed, both cases involve the same product, the same defendant, and allege that the same representations on the packaging of the product are false and misleading for the same reasons.

Permitting intervention will not "unduly delay or prejudice the adjudication of [Ferguson's] rights." Fed. R. Civ. P. 24(b)(3). As an initial matter, the Court should

weigh only the impact of *intervention* on Ferguson's rights, and not the impact of a subsequent ruling under the first-to-file rule. *See Manier*, 2017 WL 59066, at *2 ("Plaintiffs have not demonstrated that allowing intervention—not necessarily *dismissal* of the action—would impose undue delay or prejudice their rights in the case." (emphasis in original)). Even if the Court were to consider the impact of a transfer or stay on this action, Ferguson's interests are adequately protected. If the case is transferred, Ferguson will continue to be able to pursue his claims in an alternative forum. Alternatively, if the Court stays this action, Ferguson's interest will not be prejudiced because *Worth* Plaintiffs will vigorously pursue his claims—which are based on factual and legal research and investigation that the *Worth* Plaintiffs originated. Further, any delay or prejudice is outweighed by the interests in (a) judicial economy, (b) efficiency, (c) comity, and (d) consistency. *Manier*, 2017 WL 59066, at *2 ("The likelihood of undue delay and/or prejudice to the Plaintiffs in this action is small enough that it does not outweigh the existence of other factors supporting intervention.").

## IV. THE COURT SHOULD TRANSFER OR STAY THIS ACTION UNDER THE FIRST-TO-FILE RULE

If there was any case where the first-to-file rule should apply, it is this one. First, it is beyond dispute that the *Worth* Case was the first filed. Indeed, it was filed over *two and half years* prior to the instant action. *See Worth* Complaint, Ex. A. Second, the parties in the two actions are the same. Both suits name as the sole defendant CVS Pharmacy, Inc., and the putative class of nationwide purchasers in the *Worth* Complaint subsumes Ferguson's claims and those of the putative class of California purchasers. *Id.* ¶¶ 68–105; *see also Herman v. YellowPages.Com, LLC*, No. 10 Civ. 195 (JAH) (AJB), 2011 WL 1615174, at 4 (S.D. Cal. Mar. 29, 2011) ("[T]he record reflects that the classes at issue are the same, with the *Kowalski* class of New Jersey customers being subsumed by the *Herman* nationwide class of

YellowPages.com advertising customers."); *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 n.6 (N.D. Cal. 2008) ("[E]xact identity is not required to satisfy the first-to-file rule."). Third, the issues in these cases are identical. Indeed, Mr. Ferguson copied the *Worth* Complaint largely word for word, going so far as to utilize the photographs of the product taken by *Worth* Counsel. *Compare Worth* Complaint ¶ 16, Ex. A, *with Ferguson* Complaint ¶ 17.

Further, transferring or staying this action will serve the underlying purposes of the first-to-file rule, namely, "economy, consistency, and comity." *See Kohn Law Grp., Inc.*, 787 F.3d at 1240; *see also, e.g., Manier*, 2017 WL 59066, at *3 (permitting first-filed plaintiff to intervene under Rule 24(b) and transferring later-filed action, noting "transfer of this case is appropriate based on the first-to-file factors and promotes the policy considerations underlying the rule").

If the *Ferguson* Case is litigated, there are significant risks of inconsistent rulings between the two courts. Further, the courts' and parties' efforts will be entirely duplicative, wasting resources. Alternatively, if Ferguson were to enter into a reverse auction settlement with CVS, the adequacy of any such settlement would be in serious doubt. Much effort and ink will undoubtedly be squandered investigating Ferguson and his counsel's adequacy and urging the court to reject any such agreement. More, regardless of Ferguson's approach, the mere existence of this action will undermine the *Worth* Plaintiffs' position in mediation with CVS, which will use the existence of two active cases proceeding in different fora to its advantage. It was these concerns that led Judge Gold, who has substantial experience evaluating the claims in this case, to appoint *Worth* Counsel interim co-lead counsel to negotiate exclusively for the class. *See* Letter Renewing FRCP 23(G) Motion, *Worth*, ECF No. 89; *Worth*, Minute Entry June 18, 2018; Interim Co-Lead Counsel Order, Ex. E.

In sum, transferring or staying this action is "appropriate based on the first-to-file factors and promotes the policy considerations underlying the rule." *Manier*,

- 15 - Case No. 18cv1529

2017 WL 59066, at *3. Consequently, the *Worth* Plaintiffs respectfully ask the Court to apply the first-to-file rule and transfer *Ferguson* to join the earlier-filed *Worth* Case in the Eastern District of New York or, alternatively, stay this action.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion of Jeffrey Worth and Robert Burns to intervene in the above-captioned action.

Date: September 6, 2018            Respectfully submitted,

**REESE LLP**

By: */s/ Michael R. Reese*

Michael R. Reese (SBN 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**CENTER FOR SCIENCE
IN THE PUBLIC INTEREST**
Maia Kats (to be admitted *pro hac vice*)
*mkats@cspinet.org*
Matthew Simon (to be admitted *pro hac vice*)
*msimon@cspinet.org*
1220 L Street, NW, Suite 300
Washington, District of Columbia 20005
Telephone: (202) 777-8381
Facsimile: (202) 265-4954

**MEHRI & SKALET, PLLC**
Craig L. Briskin (to be admitted *pro hac vice*)
*cbriskin@findjustice.com*
1250 Connecticut Avenue, NW, Suite 300
Washington, District of Columbia 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997

*Counsel for Proposed Intervenors Jeffrey Worth and Robert Burns*