FINKELSTEIN & KRINSK LLP
Jeffrey R. Krinsk, Esq. (SBN 109234)
jrk@classactionlaw.com
Trenton R. Kashima, Esq. (SBN 291405)
trk@classactionlaw.com
550 West C St., Suite 1760
San Diego, California 92101
Telephone: (619) 238-1333
Facsimile:  (619) 238-5425

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LES FERGUSON, individually and on behalf of all others similarly situated, | Case No: 3:15-cv-00165-L-DHB |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO INTERVENE AND TO TRANSFER OR, IN THE ALTERNATIVE, TO STAY THIS ACTION PURSUANT TO THE FIRST-TO-FILE RULE** |
| v. | |
| CVS PHARMACY, INC. | |
| Defendant. | |
| | Date:     Oct. 25, 2018 |
| | Time:     1:30 PM |
| | Judge:    Hon. Janis L. Sammartino |
| | Ctrm:     4D |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... ii

I. INTRODUCTION ............................................................................................1

II. Argument .........................................................................................................2

    A. Intervention is not Warranted, as a Matter of Right, Under Rule 24(a) ....2

        1. The Intervenors do not have an "interest" in the subject of the action .................................................................................................2

        2. Disposition of this case, as a practical matter, will not impede or impair the Intervenors' ability to protect that their interest .............6

        3. Plaintiff adequately represents the Intervenor's interests with regards to the California purchasers ................................................8

    B. Permissive Intervention not Warranted Under Rule 24(b) ......................11

    C. The First-to-File Rule does not Apply in this Case.................................11

        1. This Action should not be stayed pending the outcome of the *Worth* action ...............................................................................12

        2. This Action cannot be transferred to the Eastern District of New York..............................................................................................14

III. CONCLUSION ............................................................................................16

**TABLE OF AUTHORITIES**

<u>**Federal Cases**</u>

*Adoma v. Univ. of Phoenix, Inc.*,
  711 F.Supp.2d 1142 (E.D. Cal. 2010)............................................................12, 13

*Alltrade, Inc. v. Uniweld Products, Inc.*,
  946 F.2d 622 (9th Cir. 1991) ............................................................................ 12

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003), *as amended* (May 13, 2003).................................. 9

*Bonkowski v. HP Hood LLC*,
  No. 15-CV-4956, 2016 WL 4536868 (E.D.N.Y. Aug. 30, 2016) .......................... 15

*Cabazon Band of Mission Indians v. Wilson*,
  124 F.3d 1050 (9th Cir. 1997) ............................................................................ 2

*Curry v. Regents of Univ. of Minnesota*,
  167 F.3d 420 (8th Cir. 1999) ............................................................................ 7

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) ........................................................................... 11

*E. Texas Motor Freight Sys. Inc. v. Rodriguez*,
  431 U.S. 395 (1977) ......................................................................................... 5

*Famular v. Whirlpool Corp.*,
  No. 16 CV 944, 2017 WL 2470844 (S.D.N.Y. June 7, 2017). ............................. 15

*Feinstein v. Firestone Tire & Rubber Co.*,
  535 F.Supp. 595 (S.D.N.Y. 1982)....................................................................... 5

*Felchlin v. Am. Smelting & Ref. Co.*,
  136 F. Supp. 577 (S.D. Cal. 1955)..................................................................... 14

*Hawkins v. Gerber Prod. Co.*,
  924 F.Supp.2d 1208 (S.D. Cal. 2013) ............................................................... 14

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ............................................................................. 5

*Hudson v. Capital Mgmt. Int'l, Inc.*,
  565 F.Supp. 615 (N.D. Cal. 1983) ...................................................................... 4

*In re Charles Schwab Corp. Sec. Litig.*,
  264 F.R.D. 531 (N.D. Cal. 2009)....................................................................... 13

*In re Discovery Zone Sec. Litig.*,
  181 F.R.D. 582 (N.D. Ill. 1998).......................................................................... 3

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  209 F.R.D. 323 (S.D.N.Y. 2002) ........................................................................ 6

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  230 F.R.D. 61 (D. Mass. 2005).......................................................................... 13

*Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*,
  342 U.S. 180 (1952).......................................................................................... 12

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) .............................................................................. 3

*McCrary v. Elations Co., LLC*,
  No. 13-cv-00242, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ........................ 4

*Minholz v. Lockheed Martin Corp.*,
  No. 16-CV-154, 2016 WL 7496129 (N.D.N.Y. Dec. 30, 2016).......................... 15

*Moore v. Verizon Commc'ns Inc.*,
  No. C 09-1823 SBA, 2013 WL 450365 (N.D. Cal. Feb. 5, 2013) ...................... 11

*Nordberg v. Trilegiant Corp.*,
  445 F.Supp.2d 1082 (N.D. Cal. 2006) ................................................................ 4

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) .............................................................................. 8

*Pacesetter Systems, Inc. v. Medtronic, Inc.*,
  678 F.2d 93 (9th Cir. 1982) .............................................................................. 12

*Peterson v. United States*,
  41 F.R.D. 131 (D. Minn. 1966)........................................................................... 7

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ............................................................................................ 8

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) .............................................................................. 7

*Spratley v. FCA US LLC*,
  No. 317CV0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017)........................ 15

*Standard Heating & Air Conditioning Co. v. City of Minneapolis*,
  137 F.3d 567 (8th Cir. 1998) ..........................................................................7, 8

*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012).................................................................4, 10, 13

*Taormina v. Thrifty Car Rental*,
  No. 16-CV-3255, 2016 WL 7392214 (S.D.N.Y. Dec. 21, 2016)........................ 15

*Thompson v. Am. Tobacco Co.*,
  189 F.R.D. 544 (D. Minn. 1999)......................................................................... 5

*W. States Wholesale, Inc. v. Synthetic Indust., Inc.*,
  206 F.R.D. 271 (C.D. Cal. 2002) ......................................................................... 5

*Washington Elec. v. Massachusetts Mun. Wholesale Elec.*,

iii

922 F.2d 92 (2d Cir. 1990) ............................................................................ 7

*Wilderness USA v. Deangelo Bros. LLC*,
  No. 17-CV-6491, 2017 WL 3635123 (W.D.N.Y. Aug. 23, 2017)...................... 15

**State Cases**

*Bank of the West v. Sup. Ct.*,
  2 Cal.4th 1254 (1992)................................................................................ 4

*Benjamin v. Dep't of Pub. Welfare of Cmwlth.*,
  267 F.R.D. 456 (M.D. Pa. 2010).................................................................. 7

*Boeken v. Philip Morris USA, Inc.*,
  48 Cal.4th 788 (2010)................................................................................ 6

*Daar v. Yellow Cab Co.*,
  67 Cal. 2d 695 (1967)................................................................................ 6

*In re Tobacco II Cases*,
  46 Cal.4th 298 (2009).............................................................................1, 4

*Wershba v. Apple Computer, Inc.*,
  91 Cal.App.4th 224 (2001) .....................................................................1, 10

**Statutes**

28 U.S.C. § 1404.......................................................................................... 14

Cal. Bus. & Prof. Code § 17200 .................................................................... 1

Cal. Bus. & Prof. Code § 17500 .................................................................... 1

Cal. Civ. Code § 1750.................................................................................... 1

Cal. Civ. Code § 1770.................................................................................... 4

**Court Rules**

Fed. R. Civ. Pro. 23 ...................................................................................... 8

**Other Authorities**

7C Wright, Miller & Kane, § 1909.................................................................. 9

Newberg on Class Actions § 18:19 (5th ed. 2014) ......................................... 6

## I.  **INTRODUCTION**

This case involves Defendant CVS Pharmacy, Inc.'s sale of the Algal-900 DHA dietary supplement, which was advertised to improve memory.  The Federal Trade Commission, however, concluded that the current scientific literature does not support claims that DHA improves memory, and has prohibited other companies from making similar memory claims on similar products.  Plaintiff Ferguson, in this case, seeks to represent a California class, for violations of California law, namely the False Advertisement Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.; and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. *See generally* Plaintiff's Complaint [Dkt. No. 1].  There is a reason that Plaintiff seeks the protections of California's statutory law, "California's consumer protection laws are among the strongest in the country."  *Wershba v. Apple Computer*, *Inc*., 91 Cal.App.4th 224, 242 (2001).  "California's unfair competition law imposes liability without the necessity of showing intent."  *Id.*  And relief under these statutes are available without a showing of "individualized proof of deception, reliance and injury."  *In re Tobacco II Cases*, 46 Cal.4th 298, 320 (2009).

Now comes Jeffrey Worth and Robert Burns (the proposed "Intervenors"), along with their counsel, who seek to intervene into this case, because they believe they are in the best position to represent the *Ferguson's* putative class and their California claims (*i.e.* the California purchasers of Algal-900 DHA).  Alternatively, the Intervenors seek to stay Plaintiff's case, in favor of the "prior" filed *Worth v. CVS Pharmacy, Inc*., No. 16-cv-2624 (E.D.N.Y.), or transfer this case to the Eastern District of New York, where *Worth* is pending.

There is only one problem, while *Worth* and the instant case are based on the similar facts, the cases involve completely different legal claims and classes.  The proposed Intervenors are not members of the *Ferguson* class and lack standing to assert any of *Ferguson* statutory claims.  It is undisputed that Messrs. Worth and

1

Burns, made their purchases in New York and Florida, respectively. The *Worth* Complaint [Dkt. 4-2], at ¶¶ 10-11. They have no connection to California, or this Court. *See generally id.* Their Complaint does not seek claims under the UCL, FAL or CLRA. *See generally id.* Additionally, Plaintiff (and his case) has no connection with the Eastern District of New York, who would likely dismiss Plaintiff for a lack of jurisdiction.

Instead, the proposed Intervenors' intentions are transparent. The Intervenors attempt to silence any competing class actions, even if the case better represents the underlying class's legal claims.

## II.   ARGUMENT

### A.   Intervention is not Warranted, as a Matter of Right, Under Rule 24(a)

The parties do not dispute the appropriate legal standard under Rule 24(a). An applicant for intervention under this subsection must make a four-fold showing: (1) an "interest" in the property or transaction which is the subject of the action; (2) disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest; (3) the application is timely; and (4) no existing party adequately represents the applicant's interest. *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1061 (9th Cir. 1997); *See also* Motion, at p. 7. Plaintiff does not dispute that the Intervenor's request was timely, but does oppose the remaining elements.

#### 1.   The Intervenors do not have an "interest" in the subject of the action

The Intervenors claim that granting their Motion will "serve the best interest of the class… ." Motion to Intervene and Transfer or Stay ("Motion") [Dkt. 1], at p. 2. Implicit in this argument is that the Intervenors can (and do) represent the 'interests' of the proposed *Ferguson* Class. Plaintiff admits that <u>absent class members</u> can have a sufficient interest in the conduct of a class action brought on their behalf. *In re*

1   *Discovery Zone Sec. Litig.*, 181 F.R.D. 582, 589 (N.D. Ill. 1998) ("In the class action

2   context, absent (or unnamed) class members generally can intervene if the class

3   representatives are no longer adequately representing their interests—although the

4   absent class member must technically meet either Rule 24(a)'s or (b)'s requirements as

5   well.")   Accordingly, when determining whether an individual should be allowed to

6   intervene in a class action, to protect the interest of the class, the Court should first

7   determine the "threshold matter" of whether the intervenor is a member of the putative

8   class they seek to represent.  *Id.*

9         Here, the proposed Intervenors are not members of the *Ferguson* class.

10   Plaintiff only seeks to represent <u>*California*</u> purchasers of the Algal-900 products.  The

11   *Ferguson* Complaint [Dkt. 1], at ¶ 34.  The intervenors made their purchases in <u>*New*</u>

12   <u>*York*</u> and <u>*Florida*</u>.  The *Worth* Complaint [Dkt. 4-2], at ¶¶ 10-11.  Plaintiff also brings

13   his action under the UCL, FAL or CLRA.  The *Ferguson* Complaint [Dkt. 1], at ¶¶

14   42-90.  Out-of-state purchaser generally cannot bring their claims under the UCL,

15   FAL or CLRA (at least absent some sufficient nexus between California and the

16   defendant's conduct).  *See generally Mazza v. Am. Honda Motor Co.*, 666 F.3d 581

17   (9th Cir. 2012).  The Intervenors are, by definition, not members of the *Ferguson* class

18   and have no claims under the UCL, FAL, and CLRA.  Therefore, <u>*the Intervenors have*</u>

19   <u>*no interest in Plaintiff's causes of action*</u>.

20         The Intervenors attempt to side-step this inconvenient fact by suggesting that

21   they represent *Ferguson's* <u>*California*</u> purchasers through their <u>*National*</u> class.  Motion

22   at pp. 9-10.  This claim is problematic.  Generally, a national class in consumer

23   product cases are difficult to certify, at best.  *See generally Mazza*, *supra*.  This is

24   especially true under the theories of recovery espoused in the *Worth*.  The Intervenor's

25   national class only asserts claims for negligent misrepresentation, fraudulent

26   misrepresentation, and unjust enrichment.  The *Worth* Complaint [Dkt. 4-2], at ¶¶ 88-

27   105.  The first two tort based causes of action require a finding of individual reliance,

28   which usually cannot be determined on a class-wide basis.  *Hudson v. Capital Mgmt.*

3

1  *Int'l, Inc.*, 565 F.Supp. 615, 630 (N.D. Cal. 1983) ("The elements of common law
2  fraud [and] negligent misrepresentation… vary, of course, from state to state.
3  Moreover, even if the court were to consider a California class only, proof of
4  individual reliance would be necessary, as the court previously held.").   And it is
5  unclear if unjust enrichment is a cogent cause of action under California law.
6  *Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082, 1100 (N.D. Cal. 2006) ("The state
7  and the federal courts appear to be unclear whether in California a court may
8  recognize a claim for "unjust enrichment" as a separate cause of action.").  The *Worth*
9  national class's claims are weak at best, and uncertifiable at worst.

10       In contrast to *Worth's* tort and quasi-contract claims, the UCL, FAL and CLRA
11  are well suited for class-wide adjudication.  *Tait v. BSH Home Appliances Corp*., 289
12  F.R.D. 466, 480 (C.D. Cal. 2012) ("[C]laims under the UCL, FAL, and CLRA ideal
13  for class certification because they will not require the court to investigate 'class
14  members' individual interaction with the product.").   California's UCL and FAL
15  generally prohibit "deceptive" advertising.   *Bank of the West v. Sup. Ct*., 2 Cal.4th
16  1254, 1267 (1992).  The CLRA also prohibits "unfair or deceptive acts or practices,"
17  such as "representing that goods or services have sponsorship, approval,
18  characteristics, ingredients, uses, benefits, or quantities which they do not have."  Cal.
19  Civ. Code § 1770(a)(5).   Under each of these statutes, the legal test is the same;
20  Plaintiff only must prove that a "reasonable consumer" is "likely to be deceived" by
21  Defendant's misrepresentations.   Additionally, causation under the UCL, FAL, and
22  CLRA can be determined without individual inquires.   *In re Tobacco II Cases*, 46
23  Cal.4th at 320 (Courts have "repeatedly and consistently [held] that relief under the
24  UCL [and FAL] is available without individualized proof of deception, reliance and
25  injury."); *McCrary v. Elations Co., LLC*, No. 13-cv-00242, 2014 WL 1779243, at *14
26  (C.D. Cal. Jan. 13, 2014) ("[T]he determination of materiality, and thus reliance, is
27  determined using objective criteria that apply to the entire class and do not require
28  individualized determination").  Plaintiff has pled the most feasible claims for the

4

1  California Algal-900 DHA purchasers.

2      Whatever the Intervenors' limited interest in Plaintiff's case may be, it does not

3  warrant their intervention into this case under the guise of "protecting" the California

4  class.  The Intervenors incontestably cannot adequately represent the *Ferguson* class

5  or their claims.  *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010) ("Class

6  representation is inadequate if the named plaintiff fails to prosecute the action

7  vigorously on behalf of the entire class or has an insurmountable conflict of interest

8  with other class members.").

9      First, the Intervenors are not a member of the *Ferguson* class, a clear

10  disqualification.  *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403

11  (1977) ("As this Court has repeatedly held, a class representative must be part of the

12  class.").

13      Second, "[c]onflicts of interest may arise when one group within a larger class

14  possesses a claim that is neither typical of the rest of the class nor shared by the class

15  representative."  *Hesse*, 598 F.3d at 585.  The Intervenors do not share the same

16  strong statutory claims present in the current action, amounting to "an insurmountable

17  conflict of interest with those [California] members of the class."  *Id.*  By asserting

18  their shaky tort and quasi-contract claims, over Plaintiff's stronger statutory causes of

19  action, the Intervenors jeopardized the California Algal-900 DHA purchasers' legal

20  rights.  The Court should seriously question the motivation of these purported

21  "champions" of the *Ferguson* Class, who seeks to negotiate a settlement of their case

22  by threatening to stay all but the weakest of legal claims. *See Feinstein v. Firestone*

23  *Tire & Rubber Co.*, 535 F.Supp. 595, 606 (S.D.N.Y. 1982) (class certification cannot

24  be "purchased at the price of presenting putative class members with significant risks

25  of being told later that they had impermissibly split a single cause of action"); *see also*

26  *Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 551 (D. Minn. 1999); *W. States*

27  *Wholesale, Inc. v. Synthetic Indust., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002)

28  (representatives not adequate "[w]hen the class representative abandons particular

1 | remedies to the detriment of the class," citing *Thompson* and *Feinstein*); *In re Methyl*
2 | *Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 340 (S.D.N.Y.
3 | 2002).

4 |      2.      Disposition of this case, as a practical matter, will not impede or impair the Intervenors' ability to protect that their interest

        As noted above, this case does not include the same claims, for the same class, as *Worth*.  Any judgment or settlement of the *Ferguson* class will not prejudice the Intervenors' ability to continue their litigation or seek settlement of their claims.

        Whether a class action ends in settlement or a judgment on the merits, the preclusive effect on future actions is governed by the doctrine of *res judicata*. NEWBERG ON CLASS ACTIONS § 18:19 (5th ed. 2014) ("The process by which a class action settlement is approved has the effect of turning the private settlement into a judicial ruling, a judgment. Thus, in class actions, future litigation is always governed by the doctrine of preclusion and never by the settlement contract directly.").

        Under California law, *res judicata* precludes a plaintiff from litigating a claim if (1) the claim relates to the same "primary right" as a claim in a prior action, (2) the prior judgment was final and on the merits, and (3) the plaintiff was a party or in privity with a party in the prior action.  *Boeken v. Philip Morris USA, Inc.*, 48 Cal.4th 788, 797 (2010).  To put it in another way, "a judgment in a class action is *res judicata* as to claims of members of the class represented therein."  *Daar v. Yellow Cab Co.*, 67 Cal.2d 695, 704 (1967).

        Assuming that Plaintiff did either settle his claims or got a judgment in his case, whether on an individual or a class basis, it would not prevent the Intervenors from moving forward with their own action.  At most, a settlement would bind the California Algal-900 DHA purchasers.  And for the reasons stated above, the Intervenors are not members of the *Ferguson* class and are not able to adequately represent these individuals anyways.  The Intervenors' interest in the outcome of this case are simply remote to this case and do not warrant intervention. *Benjamin v. Dep't*

1   *of Pub. Welfare of Cmwlth.*, 267 F.R.D. 456, 462 (M.D. Pa. 2010) (refusing to grant
2   intervention in a class action because the applicants were not members of the
3   underlying class who would be bound by the litigation).

4        The Intervenors, nonetheless, suggest that this case poses an existential risk to
5   the *Worth* action.   To do so, the Intervenors submit, without any evidence, that
6   Plaintiff is actually a puppet, whose strings are being held by Mr. Zimmerman
7   (counsel in the *Aliano* action).   Motion at p. 6.   It is therefore argued that this case is
8   an attempt at a "reverse auction" that would only serve to reduce the value of any
9   class-wide settlement.   *Id.* at pp. 6-7.[1]   This conspiracy theory, while entertaining, is
10  nothing more than the Intervenors' machinations based on speculation and surmise.

11       But even in this implausible scenario, "[t]he mere existence of a third person's
12  contingent interest in the outcome of pending litigation is insufficient to warrant
13  intervention."   *Peterson v. United States*, 41 F.R.D. 131, 133 (D. Minn. 1966).   To
14  satisfy the "interest" and "impediment" requirements, a party must show more than a
15  mere economic interest; rather, the interest must be "direct, substantial, and legally
16  protectable."   *Curry v. Regents of Univ. of Minnesota*, 167 F.3d 420, 422 (8th Cir.
17  1999) (citing *Standard Heating & Air Conditioning Co. v. City of Minneapolis*, 137
18  F.3d 567, 571 (8th Cir. 1998).).   "'An interest that is remote from the subject matter of
19  the proceeding, or that is contingent upon the occurrence of a sequence of events
20  before it becomes colorable, will not satisfy the rule.' " *Standard Heating & Air
21  Conditioning Co.,* 137 F.3d at 571 (quoting *Washington Elec. v. Massachusetts Mun.
22  Wholesale Elec.*, 922 F.2d 92, 97 (2d Cir. 1990)).

23       The Intervenors have not demonstrated that any collusive relationship exist
24

---

25     [1] *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002) ("A reverse
26  auction is said to occur when "the defendant in a series of class actions picks the most
27  ineffectual class lawyers to negotiate a settlement with in the hope that the district
    court will approve a weak settlement that will preclude other claims against the
28  defendant.") (J. Posner).

between Plaintiff and Defendant, nor that any settlement discussions between Plaintiff and Defendant are imminent.[2]  Instead, the only immediate threat this case poses is that it may reveal the clear inadequacy of the Intervenors' representation of the California Algal-900 DHA purchasers.  But, this is not an impediment protected by Rule 24.

It is also important to appreciate that "[u]nlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982).  Not only must the court determine the terms of a class settlement are "fair, reasonable, and adequate" (Fed. R. Civ. Pro. 23(e)(2)), but certain due process protections must be afforded to the absent class members.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (Class settlements require that absent class member be sent reasonable notice and receive an opportunity to be heard.)  Thus, any class settlement in this case will be subject to judicial scrutiny, and will offer class members the opportunity to address their objections to the Court.  If the intervenors are actually concerned about the eventuality of some improper or coercive settlement in this case, the most prudent course is to allow this case to move forward and allow intervention, if and when a class settlement is submitted for approval (that is if the instant putative class is somehow expanded to include the *Worth* plaintiffs).

### 3.   Plaintiff adequately represents the Intervenor's interests with regards to the California purchasers

Parties who are able to assert an interest in the subject matter of the litigation still may not intervene if the existing parties adequately represent their interests. *Standard Heating & Air Conditioning Co.*, 137 F.3d at 572.  "When an applicant for

---

[2] Strangely, the Intervenors assert that they will be in mediation with Defendant shortly.  Motion at p. 10.  So, if any case is likely to settle the instant claims, it is *Worth*.

intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003). "If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." *Id*. (citing 7C Wright, Miller & Kane, § 1909, at 318–19).[3]

Plaintiff assumes, perhaps incorrectly, that the Intervenors seek to maximize the recovery for the California Algal-900 DHA purchasers (whether through settlement or litigation). Consequently, Plaintiff has the same "ultimate objective" as the Intervenors. But, Intervenors see it differently.

First, the Intervenors assert Plaintiff does not adequately represent their interest because the undersigned counsel, and his firm, are "ineffectual" and will negotiate a "weak settlement." Motion at p. 12. While it is hard not to take these accusations personally, Finkelstein & Krinsk LLP's achievements speak for themselves. In the past approximately two years, Finkelstein & Krinsk LLP has litigated consumer class actions *from complaint to trial briefs*, only settling the case on the steps of the Courthouse, and has been appointed class counsel in another dietary supplement case before this court. Declaration of Trenton R. Kashima ("Kashima Decl."), at ¶¶ 3-4. Counsel is well versed with class actions and this particular area of the law. Additionally, the Firm has sought to vindicate consumer's rights in California's appellate courts, including up to the California Supreme Court. *Id.*, at ¶ 5. Nothing suggests that the undersigned counsel will not vigorously litigate this case on behalf of the putative *Ferguson* Class.

As stated above, Plaintiff (through his counsel) likely represents a better option for the California Algal-900 DHA purchasers. Unlike the Intervenors, Plaintiff and

---

[3] Additionally, because the Intervenors seek to intervene not only on their own behalf, but on behalf of the putative California class, it is only appropriate that the Intervenors' claims be examined under the standards espoused by Rule 23(a)(4).

1   the undersigned counsel are prepared to litigate the instant claims under California

2   favorable consumer protection statutes.  And the Intervenors offer no argument as to

3   why a California class representative would be less suited than New York or Florida

4   class representative to forward the claims of a California class, for violations of

5   California law.  Instead, the only indicia of collusion to undermine the California

6   class's claims is the Intervenors' actions in seeking to effectively neuter the only case

7   asserting California statutory claims.

8         Second, the Intervenors' claim that Plaintiff is inadequate because they are not

9   willing to move to transfer this case before Eastern District of New York, or stay this

10   case in favor of the *Worth* Action.  The former argument does not make much sense.

11   For the reasons stated below, the Eastern District of New York likely lacks

12   jurisdiction to hear Plaintiff's claims.  *See, infra,* section II(C)(2).  Why Plaintiff

13   should take an action that opens the California Algal-900 DHA purchasers to a motion

14   to dismiss for lack of jurisdiction is left unexplained by the Intervenors.

15         The latter argument is also meritless.  Staying the instant case will only

16   undermine the California purchasers' claims and, in turn, their negotiating position.  It

17   is axiomatic that a parties' negotiating position is dictated, in part, by the strength of

18   the merits of their claims.  Again, California has some of the strongest consumer

19   protection laws in the nation.  *Wershba*, 91 Cal.App.4th at 242.  Additionally, the

20   UCL, FAL, and CLRA are perfectly suited for class litigation.  *Tait*, 289 F.R.D. at

21   480.  Removing the pressure created by these statutory claims does not maximize the

22   potential recovery for the California Algal-900 DHA purchasers' claims.

23         While it is true that Plaintiff will not seek to move to transfer this case before

24   Eastern District of New York, or stay this case in favor of the *Worth*, it is not because

25   Plaintiff's interest conflicts with those of the putative California class.  It is simply

26   because Plaintiff's primary interest is vindicating the California class's claims under

27   California law, not to clear the way for the Intervenors' quick paycheck resulting from

28   an early and uncontested settlement.

## B.   Permissive Intervention not Warranted Under Rule 24(b)

"An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman,* 159 F.3d 405, 412 (9th Cir. 1998) (citation omitted).   "The proposed intervenor bears the burden to demonstrate that it has satisfied the requirements for intervention*." Moore v. Verizon Commc'ns Inc.,* No. C 09-1823 SBA, 2013 WL 450365, at *16 (N.D. Cal. Feb. 5, 2013) (citation omitted).   "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention.[ ]In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Donnelly*, 159 F.3d at 412 (citations omitted).

Here, as noted above, Plaintiffs asserts different claims, but a different class, under different law.  These claims cannot be litigated by the Intervenors.  Thus, it is highly unlikely that the Intervenors would add anything to this case, or that any judicial economies would be gained by their appearances.  Joining the Intervenors to this case will onlt result in further unnecessary infighting which will distract from the goal of this lawsuit – recovery for the putative class.

Furthermore, this Court would lack jurisdiction to hear the Intervenors' claims for same reasons that the District Court for the Eastern District of New York would lack jurisdiction to hear Plaintiff's claims.  *See, infra,* II(C)(2).  There is simply no reason for the Intervenors to join this case.

## C.   The First-to-File Rule does not Apply in this Case

The Intervenors argue that their action represents the first-filed case, and therefore confers on the Intervenors' the right to control any subsequent complaint alleged the same facts.  However, "first-to-file" rule is a doctrine of federal comity that permits a district court to decline jurisdiction over an action "when a complaint

11

1   involving the same parties and issues has already been filed in another district."

2   *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). "The

3   most basic aspect of the first-to-file rule is that it is discretionary; 'an ample degree of

4   discretion, appropriate for disciplined and experienced judges, must be left to the

5   lower courts.'" *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir.

6   1991) (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180,

7   183–84 (1952)). If this action meets the requirements of the first-to-file rule, the court

8   has the discretion to transfer, stay, or dismiss the action. *Id.* at 622. The district court

9   retains the discretion, however, to disregard the first-to-file rule in the interests of

10   equity. *Id.*

           1.    This Action should not be stayed pending the outcome of the

11                             *Worth* action

12         Contrary to the Intervenors' assertions, the *Worth* and *Ferguson* actions are not

13   identical, or even substantially similar. "In a collective action, the classes, and not the

14   class representatives, are compared." *Adoma v. Univ. of Phoenix, Inc.*, 711 F.Supp.2d

15   1142, 1147 (E.D. Cal. 2010). The *Worth* Complaint presents a myriad of legal issues

16   unnecessary to the *Ferguson* action. *Worth* pled a national class alleging negligent

17   misrepresentation, false misrepresentation, and unjust enrichment. The current action

18   limits disposition to a California-only state class for violations of the UCL, FAL, and

19   CLRA.

20         The dissimilarity in the class definitions pled have appreciable effects on the

21   course of the litigation for these two actions. The *Ferguson* avoids numerous

22   difficulties likely to impede the *Worth* action and delay any relief to California

23   consumers. Plaintiff will not have to harmonize fifty (50) state's negligent

24   misrepresentation, false misrepresentation, and unjust enrichment. Were *Worth* to

25   proceed with the case as a national class, the *Worth* Court would have to conduct "an

26   extensive analysis" as to what "issues are likely to play out in the context of the case

27   to see what individual issues are likely to arise, and what state law differences are

28

irrelevant and may be ignored." *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005). It would invite significant manageability concerns impeding the certification of the putative class and likely overcomplicate the case. *In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531, 537 (N.D. Cal. 2009) ("Where the laws of various states will govern the class claims, the differing state laws inject significant manageability concerns.") On the contrary, a California class asserting violations of the UCL, FAL, and CLRA is much more conducive to class litigation. *Tait*, 289 F.R.D. at 480.

The Intervenors' Motion treats these fundamental differences as an afterthought. However, these same differences counsel against a stay under the first-to-file rule. In *Adoma v. Univ. of Phoenix, Inc*., the Court refuse to apply the first-to-file rule when: (1) the purported first-to-filed case sought to certify a national class under federal labor law and had not conducted any California discovery or moved for class certification in the year the case was pending; and (2) the subsequent filed case sought to seek a California class for violations of the more favorable California labor code, even though the case involved similar factual claims. *Id*., 711 F.Supp.2d at 1149-50. The *Adoma* Court reasoned:

> The court is persuaded that the equities in this case tip in favor of an exception to the first-to-file rule. Specifically, the *Sabol* case has not advanced even to certification. Further, plaintiff brings additional theories of recovery. Moreover, the fact that plaintiff also seeks relief under California state law, which requires entirely different calculations for overtime compensation, demonstrates that judicial resources will not be significantly conserved.

*Id.* at 1150. A similar result should follow here.

The Intervenors do not acknowledge the significant difficulties that their chosen strategy entails. Instead, the Intervenors seem to be more focused on negotiating a national settlement class than litigation a consumer class action. While their litigation tactics are their own, the Intervenors should not be able to rob Plaintiff or the *Ferguson* class of the opportunity to actually litigate their case, *via* a more direct and less risky path to victory.

13

2.    This Action cannot be transferred to the Eastern District of New York

"A District Court is a separate entity.  No District Court has jurisdiction crossing a state line.  By virtue of these limitations, the transfer of any cause from one district to another is a question of power."  *Felchlin v. Am. Smelting & Ref. Co.*, 136 F. Supp. 577, 581 (S.D. Cal. 1955).  "There must be an express statutory grant as a condition precedent to the initiation of the transfer, and every essential factor must be present to confer jurisdiction on the court to which the case is sent."  *Id.* (emphasis added).

The Intervenors did not identify the statutory basis for their request to transfer this case to the Eastern District of New York.  Plaintiff, however, assumes that the Intervenors argue for a transfer pursuant to section 1404, which requires that the moving party establish that the transferee district is one where the action might have originally been brought.  *Hawkins v. Gerber Prod. Co.*, 924 F.Supp.2d 1208, 1212 (S.D. Cal. 2013) (citing 28 U.S.C. § 1404.)  Put differently, the transferee court must be able to exercise personal jurisdiction over the corporate defendant.  *Id.*, at 1213.

Plaintiff's and the *Ferguson* class's claims have no connection with New York.  The *Ferguson* class is comprised of California Algal-900 DHA purchasers.  Defendant is headquartered in Rhode Island and, at this point of the litigation, Plaintiffs had no reason to believe that Defendant's Algal-900 DHA marketing materials or labels originated from New York.  *See* the *Worth* Complaint [Dkt. 4-2], at ¶¶ 12-13.  District Courts in the Second District have refused to find personal jurisdiction over a corporate defendant in similar consumer class actions.

In *Famular v. Whirlpool Corp.*, "nine different plaintiffs, each a resident of a different state: Famular (New York), LeMay (Tennessee), Newman (Maryland), Moulton (South Dakota), Seay (South Carolina), Frank (Illinois), Spahr (Pennsylvania), Furlong (Kentucky), and Adams (Oklahoma)" asserted state law claims against Whirlpool Corporation and other retailers for defective washing

14

machines. *Id.,* No. 16 CV 944, 2017 WL 2470844, at *1 (S.D.N.Y. June 7, 2017). The District Court for the Southern District of New York, refused to assert "pendent personal jurisdiction over the non-New York plaintiffs' non-New York claims against Whirlpool based on facts unrelated to New York." *Id.*, at *7. In doing so, the *Famular* Court found that "none of the defendants is incorporated in or maintains its principal place of business in New York," and to the extent that plaintiffs' did not purchase their washing machines in New York, the Court could not exercise specific or general personal jurisdiction over the defendants.

The majority of the District Courts in the Second District have adopted *Famular's* position. *See Spratley v. FCA US LLC*, No. 317CV0062, 2017 WL 4023348, at *4 (N.D.N.Y. Sept. 12, 2017) (*citing Wilderness USA v. Deangelo Bros. LLC*, No. 17-CV-6491, 2017 WL 3635123 (W.D.N.Y. Aug. 23, 2017); *Minholz v. Lockheed Martin Corp*., No. 16-CV-154, 2016 WL 7496129, *9 (N.D.N.Y. Dec. 30, 2016); *Taormina v. Thrifty Car Rental*, No. 16-CV-3255, 2016 WL 7392214, *7 (S.D.N.Y. Dec. 21, 2016); *Bonkowski v. HP Hood LLC,* No. 15-CV-4956, 2016 WL 4536868, *3 (E.D.N.Y. Aug. 30, 2016)). Plaintiff doubts that a different outcome would result if its claims were transferred to the Eastern District of New York.[4]

Accordingly, Plaintiff could not have "brought" his action in the Eastern District of New York. There is no basis to transfer under section 1404 and the Court should deny the Intervenors' request to do so.

/ / /

/ / /

/ / /

---

[4] Plaintiff does not necessarily endorse the holding of *Famular* through this Opposition, but recognizes that this is the position taken by courts with the Second Circuit.

PLAINTIFFS' OPPOSITION OF MOTION TO INTERVENE AND TRANSFER OR STAY

Case No. 3:18-cv-01529

1

### III.   <u>CONCLUSION</u>

2

For the reasons stated there, the Court should deny the Motion for Intervention,

3

and the request to stay or transfer this case.

4

5    DATED: October 11, 2018                    Respectfully submitted,

6
                                              FINKELSTEIN & KRINSK LLP
7

8                                             By:  /s/ Trenton R. Kashima
                                                     Trenton R. Kashima, Esq.
9
                                              Jeffrey R. Krinsk, Esq.
10                                            Trenton R. Kashima, Esq.
                                              550 West C St., Suite 1760
11                                            San Diego, CA 92101
                                              Telephone: (619) 238-1333
12                                            Facsimile:   (619) 238-5425

13                                            *Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28